**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN McCOLLIGAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-12-2693 |
| WARDEN, | * | |
| Defendant | * | |

***

## MEMORANDUM

After receiving state prisoner John McColligan's correspondence wherein he stated he was in danger and sought solely injunctive relief (ECF No. 1), the court directed the Maryland Attorney General file a show cause response. ECF No. 2. The court noted counsel's response would constitute neither acceptance on behalf of any named defendants, nor waiver of any arguable defenses. The Maryland Attorney General responded and plaintiff replied. ECF Nos. 4, 6 &, 12, 8 & 9, respectively. Plaintiff was advised of his right to file a reply to defendant's response. [1] ECF Nos. 10. Upon review of papers filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

For the following reasons, the court finds emergency injunctive relief is unwarranted and emergency relief will be DENIED and plaintiff's complaint dismissed.

### I. BACKGROUND

McColligan a self-represented inmate, confined at the Eastern Correctional Institution ("ECI"), initiated these proceedings by claiming that he was an informant for law enforcement agencies and is now on "hit lists" maintained by the prison gangs Dead Man Incorporated ("DMI")

[1] Plaintiff subsequently filed a motion with the court seeking his transfer to North Carolina and investigation of the murder of an inmate. ECF No. 9. Defendant has replied. ECF No. 12.

Also pending are defendant's motions to seal responses. ECF Nos. 5, 7 and 13. The motions to seal shall be granted.

and Black Guerilla Family ("BGF").[2] ECF No. 1. McColligan states that he witnessed and has tried to speak out about the murder of inmate Saleem Abdula at the Western Correctional Institution ("WCI"). McColligan states that he was threatened by correctional officers at WCI if he did not "drop this ARP" that he had filed about the death of Abdulla. He states that he fears for his safety. He requests that he be transferred to North Carolina where his father lives. ECF Nos. 1 & 9.

The uncontroverted evidence indicates plaintiff was transferred from WCI to ECI in November, 2011. ECF No. 4, Ex. 1. On November 15, 2011, he was placed on administrative segregation. *Id.* As an administrative segregation inmate plaintiff remained in his cell, except for one hour per day when he received recreation and showers. Per plaintiff's request he is housed with another inmate. There have been no incidents between plaintiff and his cellmate. *Id.* Keith Brown, Correctional Case Manager, avers that plaintiff does not have any physical contact with any known members of BGF or DMI. No one named on the plaintiff's enemy list is housed at ECI. *Id.*

Case management review, which includes an interview with the inmate, is conducted approximately every thirty days. During plaintiff's review he did not advise Brown that he was in danger, in fear for his safety, or being harassed by other inmates or correctional staff. To the contrary, plaintiff requested that he be transferred to general population. The request was denied.[3] *Id.*

Shortly after plaintiff's previous civil rights case was dismissed, plaintiff claimed that a correctional officer wrote him a false infraction ticket. He also expressed concern about his housing

[2] Plaintiff filed a lawsuit requesting he be transferred to protective custody because while at WCI he claimed he assisted the FBI and other law enforcement agencies. Investigation of those claims revealed plaintiff had written a threatening letter that he claimed he intercepted from a prison gang. His request for relief was denied. *See McColligan v. Warden*, JKB-11-1874 (D. Md.)

[3] Plaintiff has filed two requests for administrative remedy during his incarceration at ECI. *Id.*, Ex. 2. Neither request concerned plaintiff's safety. *Id.*, Ex. 3.

status and parole eligibility and stated he was going on a hunger strike. *Id.*, Ex. 4. Plaintiff expressed these concerns to Congressman Elijah Cummings, who forwarded plaintiff's letter to the Department of Public Safety and Correctional Services. Plaintiff's claims were investigated and found meritless. *Id.* Ex. 5. The investigation revealed that on March 6, 2012, plaintiff was found guilty of the following rule infractions: use of threatening language; unauthorized possession or use of alcohol; possession of dietary items in sufficient quantity to suggest the intent to manufacture alcohol; exhibition of disrespect and/or vulgar language; and possessing, passing or receiving contraband. He was sanctioned to ninety days' disciplinary segregation. Additionally, it was noted plaintiff had not made any comments to correctional staff about threats to his safety. Plaintiff did refuse three meals and the hunger strike protocol was followed. Plaintiff was examined by medical staff and ended his hunger strike. *Id.* Ex. 4.

Investigators for the Division of Correction have been unable to substantiate plaintiff's claims that he is in danger or is being harassed. *Id.* On October 5, 2012, during case management review, plaintiff stated that he was not in fear for his safety and did not have any problems with the staff at ECI. ECF No. 6, Ex. 1. Plaintiff requested that he be transferred to general population. *Id.*, Ex. 1 & 2. Plaintiff stated his belief that he could be safely housed in general population. *Id.*

In his reply, plaintiff states that ECI case management acknowledged that he is in danger. He further claims that DMI member Danny Hause, Jr., recently threatened him. He states that Perry Richard Roark, of DMI originally put the hit on him in 2008. He states that he has information regarding the murder of Saleem Abdula at WCI. ECF No. 8. He claims that correspondence between him and his case manager shows that he is danger. Plaintiff has attached a note where he asked when he would see the case manager. Different handwriting states in reply, " I did write back last week. Per custody if placed G pop you will be assaulted!!" ECF No. 8.

Plaintiff states that he signed the statement that he was no longer in danger because he was told that no gang members were housed on housing unit 8 and he could safely be housed there. He states that case manager Brown told him what to write. ECF No. 9. Plaintiff further states that correctional officers at WCI know that he witnessed the assault on Abdula and his safety is threatened by them. He also alleges that a gang member was put in his cell but he was able to escape harm by faking chest pains. *Id.*

Defendant disputes that plaintiff was coerced into signing a statement requesting general population. Defendant further offers that plaintiff is not housed in the same unit as Hause, whom plaintiff claims is a threat to him. Plaintiff and Hause have no physical contact. The other inmate, Roark, is not housed at ECI. ECF No. 12, Ex. 1. Plaintiff is not housed at WCI, where he claims unidentified officers pose a risk of harm; rather, he is housed at ECI, where plaintiff states he does not have any problem with correctional staff. Lastly, subsequent to the filing of the instant complaint and his reply, plaintiff was moved to the protective custody unit of ECI. ECF No. 12, Ex. 1. Keith Brown avers that protective custody housing is appropriate for plaintiff. *Id.*

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy, *see Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), requiring a movant to demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

After considering McColligan's claims and counsel's responses, the court concludes that McColligan fails to show that he is likely to suffer irreparable harm without emergency injunctive relief. Plaintiff's allegations have been investigated by staff, who have uncovered no evidence that plaintiff has acted as an informant or is the target of a gang "hit." Plaintiff's failure to make a clear showing of irreparable harm is, by itself, a ground upon which to deny injunctive relief. *See Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.) The irreparable harm must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *see also Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983). As of the filing of the supplemental response, plaintiff is housed on protective custody status and his claims remain under investigation. None of plaintiff's known enemies are housed on plaintiff's unit. All efforts have been taken to insure his safety. Under these circumstances, the court finds injunctive relief is not warranted.[4]

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). " 'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Id.* (quoting *DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974)). An actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974). Where developments occur during the course of a case which prevent the court from being able to grant the relief requested, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). Indeed,

[4] Additionally, as to plaintiff's request that the murder of inmate Saleem Abdula be investigated, plaintiff does not have the right to have another person criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U .S. 614, 619 (1973); ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *see also Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) (per curiam)(inmate claiming correctional staff conspired to block the issuance of arrest warrants for prison officers did not have a judicially cognizable right to prosecution.)

"[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained…" *See Lewis v. Continental Bank* Corp, 494 U.S. 472, 480 (1990).

The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear that plaintiff is no longer housed on administrative segregation but rather has been granted protective custody status, his request for injunctive relief has been rendered moot. Consequently, the instant complaint for injunctive relief shall be dismissed.

A separate order follows.

April 16, 2013
Date

James K. Bredar
James K. Bredar
United States District Judge